## W. J. Williams v. J. Ogg and Keith Lumber Company.

Decided April 11, 1906.

**1.—Endorser—Nature of Obligation.**

Where one, not a payee of a note, puts his name on the back of it at the time of its inception, without any words to impress the nature of his undertaking, he is to be held liable as an original promisor, or surety, or endorser

according to the evidence as to the real obligation intended to be assumed at the time of signing.

### 2.—Articles 3811 and 3812, Revised Statutes of 1895, Construed—Sufficiency of Required Notice.

A statement in a letter by the surety to the creditor, as follows: "It will be necessary for you to exhaust every means possible to make it (the money) out of Mess. Robinson and Ogg (the makers of the note) as we do not intend to pay any more of the notes until we are forced to do so;" and again, that he "did not·intend to pay the notes or any expenses attached to them until the courts say he will have it to do," is not a compliance with the requirement of the statute that notice be given to the obligee "forthwith to institute suit."

Appeal from the County Court of Jefferson. Tried below before Hon. D. P. Wheat.

*Robertson & Whitaker,* for appellant.—If one, not the payee, put his name in blank on the back of a note at the time it was made, to give the maker credit with the payee, or if he participate in the consideration of the note, he must be considered as a joint maker of the note, or principal; and when his engagement defines his position to be such, he can not claim the right of a surety as provided in Revised Statutes, artisles 3811-3812, and require the creditor or obligee to forthwith institute suit on the note, and in case of his failure to do so to be released from liability on said note. Good v. Martin, 95 U. S., 94; Rey v. Simpson, 22 How. (U. S.), 341; Hooks v. Bramlette, 1 Texas App. Civ. Cases, secs. 867-68; McDonald v. Holt, 1 Texas App. Civ. Cases, sec. 1014; Ritter v. Hamilton, 4 Texas, 325; 1 Danil. Neg. Inst., sec. 713, note 1; Story on Promissory Notes, sec. 473; Carr v. Rowland, 14 Texas, 275; Cook v. Southwick, 9 Texas, 617; Latham v. Houston Flour Mills, 68 Texas, 130; Way v. Butterworth, 108 Mass., 512; Powell v. Commonwealth, 11 Gratt, 828; Jameson v. Officer, 39 S. W. Rep., 191; Payne v. Webster, 19 Ill., 103; 2 Brandt on Suretyship, sec. 604; 2 Story's Eq. Jur., sec. 883b.

A compliance with every condition prescribed by the statute is necessary to give the surety the relief afforded by it. (1) He must be bound as surety; (2) right of action on the contract must have accrued; (3) the notice must be in writing; and (4) the notice must be to forthwith institute suit upon such contract. Rev. Stats., arts. 3811 and 3812; 2 Brandt on Suretyship, etc., secs. 604, 605; Scales v. Cox, 106 Ind., 261.

*George D. Anderson,* for appellee Keith Lumber Company.—1. If a party (not the payee) put his name in blank on the back of a promissory note at the time it was made, he is deemed a surety.

2. If a party (not the payee) put his name in blank on the back of a promissory note at the time it was made, extraneous evidence is admissible to show that he did so as a surety, and that the payee of the note understood that he was a surety.

3. Any person bound as surety upon any contract for the payment of money when the right of action has accrued may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract; and if the creditor or obligee not being under legal disability,

shall fail to bring suit to the first term of court thereafter, or to the second term, showing good cause why he did not bring it to the first term and prosecute the same to judgment and execution, the surety giving such notice shall be discharged from all liability thereon.  Rev. Stats., arts. 3811, 3812, 3819; 1 Dan'l. on Neg. Insts., secs. 709, 710, 711 (5th ed.) ; Cook v. Southwick, 9 Texas, 615; Carr's Exers. v. Rowland, 14 Texas, 275; First Nat. Bank v. Skidmore, 30 S. W. Rep., 564; Marshall Nat. Bank v. Smith, 77 S. W. Rep., 237; Smith v. Doak; 3 Texas, 215; Ritter v. Hamilton, 4 Texas, 325; Lewis v. Riggs, 9 Texas, 164; Sullivan v. Dwyer, 42 S. W. Rep., 355.

NEILL, Associate Justice.—W. M. Robinson being desirous of purchasing ox teams and a logging outfit from the appellant W. J. Williams, importuned the Keith Lumber Company to go his security upon the purchase money notes to be given in event of such purchase. J. F. Keith, the president of the company, promised him in behalf of the company that if he would get some good man to go on the notes as maker with him, the company would endorse them.  Keith, then, being told by Robinson that he could get J. Ogg to join him in the execution of the notes, after investigating Ogg's financial standing and finding that it was good, agreed that the lumber company would endorse the notes, which the company in pursuance of the agreement did.  The notes were then taken to Nacogoches where they were signed by Ogg, Robinson having previously signed them.  There were five in number, all bearing date September 23, 1903, each for the sum of $280, payable to the order of W. J. Williams in three, six, nine, twelve and fourteen months, respectively, after date, and bearing interest from date until paid at the rate of 10 percent per annum.  All of which, save their respective numbers, are in words, figures and form as follows:

"$280.00               No. 3.  Nacogdoches, Texas, Sept. 23, 1903.
"On or before nine months after date for value received we promise to pay to the order of W. J. Williams at Lufkin, Texas, the sum of two hundred and eighty dollars, together with interest thereon from date until paid at the rate of ten percent per annum.
                    (Signed)   W. M. Robinson, J. Ogg."

Endorsed on the back "Keith Lumber Co." by H. G. Behrman, Assistant Treasurer.  Also having the following endorsement on the back of said note:  "We hereby waive protest, demand and notice of protest." (Signed) Keith Lumber Co., by J. F.  Beaumont, Texas, July 11, 1904.  Keith, Prest."

Upon the notes being delivered to Williams, the appellant, in consideration therefor, he conveyed by bill of sale the teams and logging outfit to W. M. Robinson.  On the same day Robinson executed to the Keith Lumber Company a mortgage, with power of sale, upon the property to secure and indemnify said company against any loss it might incur by reason of having endorsed the five notes or any of them.  The first two notes, numbers one and two, were paid by Robinson; that is to say, they were paid by the Keith Lumber Company and charged to his account.  However, it is stated in a letter from the lumber company to

Williams, that Robinson had paid the company a sufficient amount to cover the two first notes, which the company had paid. Which, together with other testimony in the record, is sufficient to show that the money with which the first two notes were paid was Robinson's and that the lumber company, as to their payment, did not have to resort to its mortgage security for indemnity. And that the mortgage security, after those two notes were paid, was simply to indemnify the company against the liability it might incur upon the three last notes. The evidence shows, without contradiction, that the teams and logging outfit for which the notes were given, were, before the three last notes fell due, sold by the lumber company by virtue of the power given' in the mortgage, and bought in by the company for the sum of $600 and that the property was worth fully, if not more, than the sum for which it was bid in. No part of the property or its value has been applied by the Keith Lumber Company towards the payment of the notes sued on.

This suit was brought on March 14, 1905, by the appellant, W. J. Williams, against Ogg and the Keith Lumber Company upon the three last notes. The plaintiff having alleged in his petition that Robinson is a transient person and his residence unknown.

The defendant Ogg answered by general denial. The Keith Lumber Company plead in abatement the failure of the plaintiff to make Robinson a party defendant, alleging that he and Ogg were the principal makers of the notes and that the company was simply a surety, and asked that Robinson be made a party defendant. This plea, however, was waived. The company then plead that its liability on the notes was merely that of a surety, and that after the notes sued upon severally became due it notified the plaintiff in writing to forthwith institute suit upon the same, which plaintiff failed to do; and that, thereby, it was discharged from all liability on said notes. Plaintiff filed special exceptions to this plea, which being overruled, the case was tried without a jury and judgment rendered in favor of plaintiff against Ogg for the amount due upon the three notes and that the plaintiff take nothing by his suit against the Keith Lumber Company and that it go hence without day and recover against plaintiff all costs expended.

On August 15, 1904, the Keith Lumber Company, by letter of that date to the plaintiff W. J. Williams, after informing him of the sale and purchase by the company under mortgage of the teams and logging outfit, write him: "If you wish to take the property back, in order to make yourself whole, we are willing to let you have it. If this is not done, it will be necessary for you to exhaust every means possible to get it out of Messrs. Robinson and Ogg, as we do not intend to pay any more of the notes until we are forced to do so." Again, on August 15, 1904, it wrote his attorney, Mr. Abney: "We do not intend to pay any more of the Robinson notes until we are forced to do so. We think the action of Messrs. Robinson and Ogg and that of Mr. Williams has relieved us of any obligation." And, on November 26, 1904, the company, in a letter of that date to W. J. Williams, wrote him: "As stated in our letter of August 15, we did not intend to pay the notes or any other expense attached to them until the courts say we will have it to do."

It is provided by article 3811, Revised Statutes of 1895, that "any

person bound as surety upon any contract for the payment of money or the performance of any act when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract." And by article 3812, that "if the creditor or obligee, not being under legal disability, shall fail to bring his suit to the first term of court thereafter, or to the second term, showing good cause why he did not bring it to the first term, and prosecute the same to judgment and execution, the surety giving such notice shall be discharged from all liability thereon." Article 3819 is as follows: "The remedy provided for sureties in this title extends to endorsers, guarantors, drawers of bills which have been accepted, and every other suretyship, whether created by express contract or operation of law."

All three of the articles are found under title 84 of the Revised Statutes of 1895.

The three articles quoted were originally enacted on February 5, 1858, and are sections 14, 15 and 20 of said Act. Section 14, however, which contained the clause "otherwise than by bill of exchange or promissory note assignable or negotiable by law," was modified in Revised Statutes of 1879 (article 3660) by omitting said clause.

The first question presented is, is the Keith Lumber Company, as between the original parties to the notes, a surety within the meaning of the articles quoted? Where one not a payee of a note puts his name on the back of it at the time of its inception, without any words to impress the nature of his undertaking, he is to be held liable as an original promisor or surety, or as an endorser, according to the evidence as to the real obligation intended to be assumed at the time of signing. (Cook v. Southwick, 9 Texas, 615; Carr's Exer. v. Rowland, 14 Texas, 275; Heidenheimer v. Blumenkron, 56 Texas, 312.) The undisputed facts show that the Keith Lumber Company did not by endorsing the notes intend to assume the obligation of an original promisor, but that of an endorser or surety. It is unnecessary to determine whether it was technically a surety or an endorser as such terms are sometimes distinguished from each other. It makes no difference which it is considered, for the remedy provided for a "person bound as a surety" within the meaning of article 3812, under article 3819 extends to "endorsers." We therefore conclude that the company is a surety, within the meaning of the articles quoted, upon the notes sued on.

The next question is, does the evidence tend to show that the company gave the appellant, when *his right of action accrued* on the notes, notice to forthwith institute suit on the notes or upon any of them? We have substantially recited all the evidence upon this issue. The only writing that savors of such notice is the letter written by the company to appellant on August 14, 1904. The only note sued on, upon which appellant's right of action had accrued at that time, is number 3, which, allowing for days of grace, accrued on June 26, 1904. The other two notes were not due, respectively, until September 26, and November 26, 1904. We say that the only writing which savors of the notice provided for in article 3811 is contained in the letter of August 14, 1904, because it can by no means be successfully contended that mere statements in writing by the surety to the creditor or obligee that he "does not intend to pay until he is forced to do so," or that he "did not intend

to pay the notes or any expenses attached to them until the courts say he will have it to do," is notice to the obligee *forthwith* to institute suit upon the notes, as is provided for by the articles referred to.

But does the letter of August 14, 1904, give such notice? In Valentine v. Farrington, 2 Edw. Ch. (N. Y.), 53, it is held that the request to proceed against the principal must be full and explicit, and must require proceedings without delay. This is in accord with our statute which requires the notice to the obligee *"forthwith* to institute suit." Again, in Singer v. Froutman, 49 Barb. (N. Y.), 182, it is held that a mere request on the surety's part "to push the maker," although frequently made and disregarded, will not discharge the surety. However, in New York, and in some other States, the principle that a surety is discharged by the creditor's refusal to sue the principal when requested to do so, seems to be deemed as arising from the common law and is independent of statute.

In Ohio, section 5833, Revised Statutes, provides that a surety on a note "may require the creditor, by notice in writing, to commence an action on such instrument forthwith against the principal debtor," etc.; and, further that unless the creditor receiving the notice "commences such action within a reasonable time thereafter, and proceeds with due diligence, in the ordinary course of law, to recover judgment against the principal debtor for the money . . . and to make, by execution the amount thereof, the creditor . . . so failing to comply with the requisition of such surety shall thereby forfeit the right which he would otherwise have to demand and receive from such surety the amount thereof." In construing this statute, in Baker v. Kellogg, 29 Ohio St., 663, it was held that the notice "must contain an unconditional requirement to commence an action forthwith; and a notice that the surety 'wishes' the creditor 'to proceed against the principal debtor' and collect 'the claim or have it arranged some way' and that the surety does 'not wish to remain bail any longer," was not sufficient. Again, in Porter v. First National Bank, 54 Ohio St., 155, it was held "the notice should contain a peremptory requirement of the surety on the creditor to commence suit 'forthwith' or some equivalent language."

Section 1210, Revised Statutes 1881 of Indiana, provides that "any person bound as surety, upon any contract in writing, for the payment of money, or the performance of any act, when the right of action has accrued, may require by notice in writing, the creditor or obligee forthwith to institute an action upon the contract;" and the ensuing section 1211 declares, "if the creditor or obligee shall not proceed, within a reasonable time, to bring his action upon such contract, and prosecute the same to judgment and execution, the surety shall be discharged from all liability thereon." The Supreme Court of Indiana, in construing these sections in Scales v. Cox, 6 N. E. Rep., 622, says: "The remedy provided, and the contingent relief afforded by them, are purely statutory, and hence have no common law precedent. (Halstead v. Brown, 17 Ind., 202; Driskill v. Board of Com'rs., 52 Ind., 532.) While the general rule is that a remedial statute ought to be liberally construed where its proper application rests upon some question of mere construction, this rule does not authorize a departure from any of the plain provisions of such statute. Section 1210, above set out, is, as it

is clearly intended to be, a remedial statute, but it is also a statute which authorizes an arbitrary abridgment of the common law right of the creditor or obligee to extend such indulgence as he might choose to extend to his debtor or obligor. The case presented, therefore, is one in which all the parties interested must rely upon the express terms of the section in question, where relief under it is sought and obtained." It is then held that "the statutory right of a surety to require a creditor to forthwith institute suit upon the contract in which he has become a surety only matures when the right of action matures to the creditor; and hence, when such an action may be forthwith commenced, it follows that the giving the notice contemplated by section 1210, . . . in advance of the time of the accruing of the action to the creditor, is not a substantial compliance with the provisions of the section.". (Daily v. Robinson, 86 Ind., 382; Cockran v. Orr, 94 Ind., 433.)

And in Tennessee it is held that the notice must be made and proven, in accordance with the statute, to be of any avail. (Simpson v. State, 6 Baxt., 440.)

In the case of Sullivan v. Dwyer, 42 S. W. Rep., 355, it was held by this court that, in a letter written by a surety to the obligee on a promissory note, which stated: "Under no circumstances will I consent to a prolongation of said note, and hereby request you respectfully, to use every effort to collect said note from the Dwyer family," was a notice requiring suit under our statutes. But it will at once be observed that in that case there was a *request,* which coupled with other language used, was tantamount to a requirement. In this case the letter does not contain a request of any character but only a voluntary statement that, if a certain thing is not done, "it will be necessary for the" plaintiff "to exhaust every means to get it out of Messrs. Robinson and Ogg." This might have well been regarded by the plaintiff as a gratuitous statement by the lumber company as to what it would be necessary for him to do to get his money rather than a requirement under the statute to forthwith institute suit on the notes—especially, when it is seen that only one note was due and the statement was as applicable to the other two, might the plaintiff have so regarded the statement contained in the letter.

Therefore, we must conclude that the Keith Lumber Company did not give appellant such notice as is required by article 3811, Revised Statutes of 1895. From this it follows that it was not discharged from its liability on any of said notes.

This requires us to reverse the judgment of the court below and to here render judgment in favor of the appellant, W. J. Williams, against the Keith Lumber Company; and to remand the cause, as between said company and the appellee, J. Ogg, in order that the issue of suretyship, raised by the Keith Lumber Company's pleadings, between them, and the extent of the liability of one to the other, if any, growing out of such issue, may be determined.

Reversed and rendered as between appellant and the appellee, the Keith Lumber Company; and remanded as between the appellees.

*Reversed and rendered in part, and remanded in part.*